IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATON STUBBLEFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 8166 |
| ) | |
| SERGEANT JONES, DIV. #9 (7 to 3 ) | Magistrate Judge Finnegan |
| SHIFT); OFFICER GLUSZEK, DIV. #9 ) | |
| (7 to 3 SHIFT); OFFICER LOMBARDI; ) | |
| OFFICER ZUNIGA; OFFICER COUCH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laton Stubblefield alleges that while he was a pretrial detainee in the Cook County Department of Corrections, Officers Brendon Lombardi, Steve Gluszek, Louis Zuniga, and Jason Couch used excessive force and maliciously injured him, and Sergeant Ifeoma Jones failed to intervene. This incident allegedly occurred after the officers returned him to his cell, when they pulled the chain attached to his handcuffs through the cell door's chuckhole with such force that his hands and arms were injured. His single-count First Amended Complaint seeks recovery under 42 U.S.C. § 1983 against all of the officers and the sergeant ("Defendants"). Defendants have now filed a motion for summary judgment. For the reasons discussed below, Defendants' motion is granted.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND[2]

### A. The "Combo" Restraint Used In Living Unit 1F of Division 9

On the day in question, Plaintiff was housed in Division 9, Living Unit 1F, due to his having been issued disciplinary tickets. That unit houses detainees who have abnormal behavior or disciplinary infractions, or who are "high profile." (Doc. 82 ¶¶ 4-5, 7). Plaintiff testified that he was in "ABO" which he said stood for "abnormal behavior observation" because he "kind of got into it with an officer." (Doc. 71-1, at 14). Detainees in this unit are assigned to single-person cells and are only allowed to be out of their cells for one hour per day and spend that hour apart from other detainees. (Doc. 82. ¶¶ 8, 10). During this hour, the detainees must wear handcuffs and leg shackles, with a three-foot, unremovable chain connecting the handcuffs and shackles. (*Id.* at ¶¶ 10, 12; *see also* Doc. 71-1, at 102). This restraint is called a "combo." (Doc. 82 ¶ 12). The combo allows the detainees to walk, but prevents them from running or jumping, and is used to reduce the threat the detainees pose when outside of their cells. (*Id.* at ¶¶ 12-13). While within their cells, detainees are not restrained. (*Id.* at ¶ 14).

Generally, to remove a combo when returning a detainee to his cell, the officers begin by removing the leg shackles. (Doc. 82 ¶ 16). The officers then open the cell door and the door's chuckhole. (*Id.*). The chuckhole (sometimes called the "chuck" for short) is a small slot or opening in the middle of the cell door that can be opened and closed by the guards as needed. After opening the cell door and chuckhole, the detainee (still handcuffed) is moved into the cell at which point the officers put the

---

[2] For ease of reference, page numbers cited in this opinion are drawn from the CM/ECF docket entries at the top of the filed documents.

shackle end of the combo through the chuckhole. (*Id.*). The other end of the combo chain is still attached to the detainee's handcuffs. The officers then leave the cell, closing the cell door. At this point, the detainee puts his hands through the chuckhole so the officers on the other side of the door can remove the handcuffs and take the combo. (*Id.*). The officer holds the combo throughout this process so the detainee cannot gain control of it and potentially use it as a weapon. (*Id.* at ¶¶ 16-17).

**B.     Force Used On May 24, 2012**

According to Plaintiff, there is "no dispute regarding the facts" and the "entire incident was captured in a four (4) minute video recorded by Officer Lee under the supervision of Sergeant Jones[.]" (Doc. 73, at 1). He contends that these facts show that excessive force was used on May 24, 2012 when he was returned to his cell. Defendants assert that the undisputed facts show that they used the least amount of force necessary to maintain order and safety. (Doc. 70, at 5). The factual summary that follows is based largely on Plaintiff's deposition testimony except where contradicted by the videotape that he agrees represents an accurate recording of what occurred.

The events leading up to the videotaped use of force by the Defendant Officers were not recorded but the material facts are not in dispute. On the day in question, Plaintiff was allowed out of his cell sometime between 8:00 a.m. and 10:00 a.m. for his hour alone, and spent the time walking around and watching television. (Doc. 71-1, at 14). Before the hour was over, Officer Lombardi ordered him to return to his cell and "lock up." (Doc. 82 ¶ 18). Plaintiff objected to being returned to his cell because he felt his hour was not over. (*Id.* at ¶ 19). He stated, "[y]ou cheated me out of my hour" and

requested to speak to a sergeant. (Doc. 71-1, at 15). However, Plaintiff eventually relented and walked towards his cell to lock up. (*Id.*).

Plaintiff then sat on a bench to allow Officer Lombardi to remove his leg shackles. (Doc. 71-1, at 15). Officer Lombardi ordered Plaintiff to instead stand up against a wall. (Doc. 82 ¶ 21). Plaintiff told Officer Lombardi it would be easier to have his leg shackles taken off while he sat down, and that "you all make this stuff difficult." (Doc. 71-1, at 15-16). When Officer Lombardi replied to Plaintiff that he would not remove the shackles while Plaintiff was sitting, he went to the wall as ordered. (*Id.* at 15).[3]

Officer Lombardi then told Plaintiff to lift his leg, but he said "no, you bend down there and uncuff them." (Doc. 71-1, at 15). The officer said, "this is why black people always got to be chained up like animals." (*Id.*). Officer Lombardi gave Plaintiff "a couple of direct orders" to lift his leg but Plaintiff said "no" and the officer then began "tussling with" the shackles. (*Id.* at 16). Plaintiff told Officer Lombardi to stop and again stated that he wanted to speak with a sergeant, so the officer put Plaintiff in his cell with the combo on and went to get assistance. (*Id.*).

Approximately five or six minutes later, Officer Lombardi returned with Sergeant Jones, as well as Officers Gluszek, Zuniga, and Couch. (Doc. 71-1, at 16). Officer Lombardi then opened the cell door, faced Plaintiff to the wall outside of the cell and

---

[3] The parties dispute what the usual practice is for removing the leg shackles. Plaintiff testified that the officers usually remove a detainee's leg shackles while the detainee is sitting because it is easier to do it that way. (Doc. 71-1, at 16). Defendants on the other hand allege that for safety reasons officers have a detainee stand and face a wall when removing leg shackles, since a detainee who is sitting down could kick up at the officer. (*Id.* at 81-82). The Court need not resolve this dispute since it has no bearing on the outcome of the motion.

ordered him to lift his leg. (*Id.* at 17). Plaintiff said "no, you bend down there and uncuff since [sic] you want to make things difficult." (*Id.*). Plaintiff also told Sergeant Jones that Officer Lombardi had "made the racist comments and stuff." (*Id.*). After Plaintiff again refused to lift his leg, Officer Lombardi yanked on the chain and shackles end of the combo "[b]ecause he was trying to get me to lift my leg, so he yanked the shackle from under me." (Doc. 71-1, at 18). This caused Plaintiff to fall. (*Id.*). Some officers helped Plaintiff stand back up. Plaintiff again refused to lift his leg and fell when Officer Lombardi again yanked the combo to try to get Plaintiff to lift his leg. After the third time, Plaintiff heard someone say to just take the leg shackles off while he was on the ground. (*Id.*). He was left on the ground at this point, with his chest to the floor. (*Id.*). He was ordered not to move, and he complied. (*Id.*). Officer Lombardi then unlocked and removed Plaintiff's leg shackles. (*Id.*). As a result of Officer Lombardi "pulling" the chain, Plaintiff said he got a "little scar, a scratch" on his ankle. (Doc. 82 ¶ 50).

Sergeant Jones brought a video camera to the scene and handed it to Officer Lee to operate while she supervised the other officers. (Doc. 82 ¶ 30; *see also* Doc. 71-1, at 88). The video shot by Officer Lee begins when Plaintiff is on the ground having his shackles removed. (Doc. 82 ¶ 31). After the shackles were removed, Plaintiff stood up on his own. His cell door was opened and he walked slowly backwards into his cell. (Doc. 71-1, at 19). He felt angry at Officer Lombardi for "cheat[ing]" him out of his hour, making a "racist comment" and for "being rough with the cuffs and stuff because I didn't want to raise my leg[,]" so he was staring at Officer Lombardi. (*Id.* at 19-20). While Plaintiff was standing just inside the cell, Officer Lombardi entered and searched the cell for two minutes, removing several items, including Styrofoam containers and paper.

5

(Doc. 82 ¶ 35; 5/24/12 Video Clip, Ex. H to Doc. 70). After Officer Lombardi left Plaintiff's cell, Officers Gluzek and Zuniga fed the shackle-end of the combo through the chuckhole of the half-opened cell door. (Doc. 82 ¶ 36). The video shows that as the officers began to close the cell door, Plaintiff moved his body so that part of his upper arm was in the doorway. (5/24/12 Video Clip). Officer Gluszek lightly pushed Plaintiff's arm back into the cell and then closed the door the rest of the way. (*Id.*).

What should have happened next was for Plaintiff to put his hands through the chuckhole so the officers could remove the cuffs and take the combo away. Instead, Plaintiff yanked the chain away from the officers. He testified: "That's when he slammed the door, as I was putting my hand on the chuck, and I jerked, jerked back, which caused the chains to, you know, yank, and that's when they pulled me through the chuckhole." (Doc. 71-1, at 20).[4] Plaintiff explained that the reason he jerked back and caused the chain to yank was that he "made a little step back . . . [b]ecause I was close up on the door" and "I didn't want to smash my feet or hit me or anything with the door and stuff." (*Id.*). Plaintiff further agreed that Officers Lombardi, Zuniga and Gluszek all took hold of the combo chain and pulled on it when Plaintiff jerked back. (Doc. 82 ¶¶ 40-41).

Plaintiff's testimony is consistent with the officers' testimony that Plaintiff yanked the chain from inside the cell and they then pulled back to prevent him from gaining control of the combo. (Doc. 71-1, at 66, 103, 119). It is also consistent with what the video shows. (5/24/12 Video Clip). Within a second or two after the door was closed,

---

[4] The video very clearly shows that the door was not slammed, so Plaintiff's testimony on this point is disregarded.

Officer Zuniga suddenly braced himself and began pulling the chain, and Officers Lombardi and Gluszek quickly grabbed hold of the chain to assist. (*Id.*). They pulled for approximately 5 seconds before the cell door opened part way and Plaintiff is in view on the floor or crouching low to the ground near the door with a portion of his leg in the doorway. (*Id.*). Plaintiff testified that when the officers pulled on the combo chain, he fell to the floor. (Doc. 71-1, at 21). At this point, Officer Couch used his foot to push Plaintiff back into his cell and then closed and locked the door with help from Officer Gluszek, who used his weight to hold the door shut until it was locked. (Doc. 82 ¶ 47; *see also* 5/24/12 Video Clip).

At this time, Officers Zuniga, Gluzek and Lombardi used the combo chain to pull Plaintiff's arms through the chuckhole up to his elbows and then remove the handcuffs. (Doc. 71-1, at 20; *see also* 5/24/12 Video Clip). Plaintiff explained that the officers were "having a hard time taking the cuffs off because they was pulling" and that it took "a little bit over a minute to get the cuffs off." (Doc. 71-1, at 21). The video confirms that for approximately one minute, Plaintiff stood at the door with his arms through the chuckhole while the officers held the combo chain and fiddled with the locking mechanism before removing the cuffs. (5/24/12 Video Clip). Sergeant Jones did not say or do anything during the entire incident. (Doc. 71-1, at 22).

Plaintiff's arms and hands were scraped and cut from being pulled through the chuckhole, and he was bleeding. (Doc. 71-1, at 20-22). His arms also felt numb, and he later developed bruises and swelling. (*Id.* at 22, 28). Plaintiff requested medical attention, and within five or ten minutes he was seen by a nurse who cleaned blood off of him and determined he needed to go to Cermak for treatment. (Doc. 71-1, at 22;

7

Doc. 82 ¶ 51). At Cermak, Plaintiff's cuts and scrapes were cleaned and bandaged, and he was given an ice pack and some Motrin for the swelling and pain. (Doc. 71-1, at 22-23; Doc. 82 ¶¶ 52-53). Plaintiff did not require any stitches or staples, and he had no broken bones. (Doc. 82 ¶ 52).

## DISCUSSION

**A.     Summary Judgment  Standards**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "material fact" is a fact that would "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists, and summary judgment is not appropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. However, if the evidence is merely colorable or there is not sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party, then there is no issue for trial and summary judgment may be granted. *Id*. at 249-50. The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

At the summary judgment stage, a court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, courts "draw all reasonable inferences from the evidence in the light most favorable to the nonmoving

8

party[.]" *Continental Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005) (quoting *Franklin v. City of Evanston*, 384 F.3d 838, 843 (7th Cir. 2004)). But a court is "not required to draw every conceivable inference from the record, and mere speculation or conjecture will not defeat a summary judgment motion." *Id.* (internal quotations omitted).

**B.     Standard for Excessive Force Claims by Pretrial Detainees**

On April 27, 2015, the Supreme Court heard oral argument in *Kingsley v. Hendrickson*, 744 F.3d 443 (7th Cir. 2014), *cert. granted*, 135 S. Ct. 1039 (2015). The Court is expected to resolve a circuit split regarding the substantive standard that applies to excessive force claims by pretrial detainees: Is it sufficient for the detainee to show that the officer deliberately used force and that the force was objectively unreasonable, or must the detainee also show that the officer subjectively intended to punish the detainee. In *Kingsley,* a majority of the Seventh Circuit held that proof of the officer's subjective intent is required.

In so holding, the court first noted that an excessive force claim seeks to impose liability for "'physically abusive governmental conduct'" and "[t]he right to be free from such abuse derives from various provisions of the Bill of Rights." *Id.* at 448 (citation omitted). In the context of an arrestee, the court said the Fourth Amendment affords protection from a seizure, while the Eighth Amendment's prohibition against cruel and unusual punishment applies to a convicted person serving a sentence. *Id.* (citations omitted). With regard to a pre-trial detainee who is "[b]etween the status of arrestee and sentenced prisoner" the court explained that, under the Due Process Clause, a detainee could not be punished before being found guilty of an offense. *Id.* at 448-49

9

(citing *Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16 (1979))).  Therefore, "'the proper inquiry' is whether the treatment of the detainee 'amounts to punishment'". *Id.* at 449 (citing *Bell*, 441 U.S. at 535 n.16).

Applying this standard, the majority in *Kingsley* affirmed the lower court's use of jury instructions requiring proof that the officer who allegedly used excessive force acted with recklessness since "the existence of intent—at least recklessness—*is* a requirement in Fourteenth Amendment excessive force cases." *Kingsley*, 744 F.3d at 453.  The court further explained:  "Our cases make clear that, although we employ the objective criteria of the Fourth Amendment as a touchstone by which to measure the gravity of the defendant officer's conduct, we also recognize, quite clearly, the need for a subjective inquiry into the defendant's state of mind in performing the activity under scrutiny."  *Id.* at 451-52.

In a dissenting opinion, Judge Hamilton argued that "[i]f a pretrial detainee can prove that a correctional officer used objectively unreasonable force against him, it should be self-evident that the detainee was 'punished' without due process of law." *Id.* at 455 (Hamilton, J., dissenting).  He therefore concluded that the lower court's jury instruction "added an unnecessary and confusing element of 'reckless' conduct or purpose to the required elements of plaintiff's claim." *Id.*[5]

---

[5]   The dissent also pointed out the split in the circuits on the issue of what standard should be applied:

Compare, e.g., *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (applying objective Fourth Amendment standard); and *Pierce v. Multnomah County,* 76 F.3d 1032, 1042–43 (9th Cir. 1996) (reversing defense verdict and ordering new trial with jury instructions using objective Fourth Amendment standard); with *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying Eighth Amendment standard); and *Fuentes v. Wagner*,

10

While this Court must apply the more stringent subjective standard articulated by the majority in *Kingsley*, the force used by the officers here was not even close to being objectively unreasonable anyway. For this reason, the result is the same regardless of which standard is applied: no reasonable jury could find that Defendants used excessive force in violation of Plaintiff's constitutional rights.

**B.    Analysis**

In moving for summary judgment, Defendants argue that the facts alleged by Plaintiff are "not sufficient to support his claim of cruel and unusual punishment in violation of the Eighth Amendment." (Doc. 70 at 4). They note in this regard that the "force was never applied sadistically and maliciously to cause harm" and, given Plaintiff's admission to refusing multiple direct orders, Defendants used the "least amount of force necessary at every step of interacting with Plaintiff to ensure everyone's safety." (*Id.* at 4-5). Plaintiff disagrees. He contends that the four-minute video shows that there was "no need for force" since he was shackled and handcuffed. (Doc. 73, at 4). Plaintiff specifically contends that the guards "did not need to push and kick [him] into his cell, and pulling his arms through the chuck hole with such force that the door was pulled open was clearly retaliatory." (*Id.*).

Under the standard applied by the Seventh Circuit, force used in a "good-faith effort to maintain or restore discipline" does not violate a detainee's constitutional rights,

---

206 F.3d 335, 346–48 (3d Cir. 2000) (applying Eighth Amendment standard to use of force to quell jail disturbance); see generally Karen M. Blum & John J. Ryan, *Recent Developments in the Use of Excessive Force by Law Enforcement,* 24 Touro L. Rev. 569, 573 (2008) (standards "vary widely"); Baker, *Wilson v. Spain: Will Pretrial Detainees Escape the Constitutional "Twilight Zone"?*, 75 St. John's L. Rev. 449 (2001*).*

*Kingsley*, 744 F.3d at 457 n.1 (Hamilton, J., dissenting).

but force used "maliciously and sadistically to cause harm" (or force used with reckless disregard of the detainee's rights) does. *See DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)); *see also Kingsley*, 744 F.3d at 453). In determining whether a defendant applied force in good faith or to cause harm, factors to consider include "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619.

Here, the undisputed facts show that Defendants reasonably perceived a threat from Plaintiff's jerking back of the combo chain after he was placed in the cell. The officers applied objectively reasonable and relatively minor force to extinguish the threat that he would pull the combo chain into the cell. During this incident, the officers were aware that they were not only being observed by a supervisor but also videotaped. Plaintiff's argument that there was no need for any force is undercut by his own admissions that when he was put in his cell and the door was shut, he "jerked back, which caused the chains to, you know, yank, and that's when they pulled me through the chuckhole." (Doc. 71-1, at 20). Even assuming a jury credited Plaintiff's testimony that he initially jerked the chain to prevent being hurt by the alleged slamming of the cell door (despite video evidence that contradicts this claim), he admits that it was the yanking of the chain that caused Officers Lombardi, Zuniga and Gluzek to pull back on the combo chain in response. There is also no denying that a combo chain in the control of a detainee can serve as a weapon and that by pulling the combo away from

Plaintiff, the officers ensured that he was unable to pull the chain into the cell. (Doc. 82 ¶ 17).

Moreover, while Plaintiff contends that the Defendants acted "sadistically" when pulling the combo chain so forcefully that the cell door began to open, the video belies this. It shows that the chain jerked away from the officers almost immediately after the cell door closed and the officers then pulled back quite suddenly in response for only about 5 seconds before the cell door began to open when Plaintiff's body came in contact with it. "The calculus of reasonableness must embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Here, the officers were required to act quickly so that Plaintiff's combo chain would not be pulled into his cell. No reasonable jury could conclude from the facts presented here that the officers pulled back too forcefully when it appeared Plaintiff was trying to pull the combo chain into the cell.

It is also worth noting that Plaintiff (who was 6'3 and almost 200 pounds at the time), (Doc. 71-1, at 14), was *not* restrained with leg shackles when he yanked the combo chain, so he had the means to kick, run and jump and to use the combo as a weapon had he gained control of it, (*Id.* at 19; Doc. 82 ¶ 12). Further, the reason Plaintiff was housed in a single cell in "ABO" for "abnormal behavior observation" and only allowed out when chained with the combo was because, as he put it, he "kind of got into it with an officer." (Doc. 71-1, at 14). Finally, although a significant injury is not required for an excessive force claim, the extent of any injury is evidence of the degree

13

of force used and whether that force was reasonable. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006). Here Plaintiff had cuts and scrapes that were not severe enough to require any stiches or staples, and he had no other injuries. This further supports this Court's finding that the force used and the injuries caused by that force were relatively minor.

In conclusion, even when the facts are construed in the light most favorable to Plaintiff, no reasonable jury could find from the video and other evidence that Defendants acted with intent to harm Plaintiff, or even that they "acted with reckless disregard of [his] rights[.]" *Kingsley*, 744 F.3d at 453. Nor could a reasonable jury find from the evidence that Defendants used more force than was objectively reasonable under the circumstances here. As discussed above, Defendants were confronted with a security risk by Plaintiff's conduct, and they used reasonable force to eliminate the risk.

In addition to the pulling of the chain, Plaintiff argues that the officers "did not need to push and kick [him] into his cell since he was shackled and outnumbered. (Doc 73 at 4). As he recognizes, however, "'not every push or shove by a prison guard violates a prisoner's constitutional rights.'" (*Id.* (citing *DeWalt*, 224 F.3d at 619)). Here, the video shows that as the officers were about to close the cell door, Plaintiff shifted his body so that part of his arm was blocking the door from closing. It was only then that Officer Gluszek lightly pushed Plaintiff's arm back into the cell so the door could be closed. It does not violate the Constitution to apply a minimal or modest amount of force to secure a defiant inmate. *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (officer did not use excessive force in pushing inmate against a wall when inmate would not get against the wall as ordered). As for the "kick", the video shows that, as the

14

officers pulled on the chain through the chuckhole, the cell door started to open. Plaintiff (without leg shackles) was on the floor with a portion of his leg in the doorway. While Plaintiff characterizes Officer Couch's action as using "his foot to kick Plaintiff into his cell", (Doc. 82 ¶ 47), the video only shows the officer lift his foot to Plaintiff's leg and then pushed Plaintiff back into the cell with his foot. Not surprisingly given the limited force applied, Plaintiff presents no evidence he was injured from either the shove or kick. No reasonable jury could find that the officers' actions here amounted to use of excessive force.

Finally, while his brief focuses on the force used during the videotaped incident, Plaintiff also complained during his deposition about that earlier conduct of Officer Lombardi while trying to remove the shackles was "a little bit excessive." (Doc. 71-1, at 24). Plaintiff acknowledged, however, that the officer pulled on the shackle chain "[b]ecause he was trying to get me to lift my leg" and only after Plaintiff refused a direct order to do so. (*Id.* at 18). This happened three times in short order since Plaintiff continued to refuse to lift his leg. Then the officer removed the shackle while Plaintiff was on the ground. The alleged injury was a "little scar, a scratch" on the ankle from the pulling of the chain. (*Id.*). Again no reasonable jury could find that this minor use of force was objectively unreasonable or intended to inflict punishment. Plaintiff's failure to follow orders created a safety risk by undermining the authority of the officer and his control within the unit. When a detainee "'cannot be persuaded to obey [an] order, some means must be used to compel compliance' because discipline in a correctional institution is 'essential if the prison is to function.'" *Burton v. Ruzicki*, 258 F. App'x 882, 885 (7th Cir. 2007) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). *See*

*also Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (due to hazards posed by inmates throwing items through cuffports, closing cuffport door on inmate's hand was reasonable when inmate held his hand near opening and threatened to throw out garbage).

Because this Court is granting summary judgment based on the lack of evidence that any officer deprived Plaintiff of his constitutional rights by using excessive force, the claim against Sergeant Jones for failing to intervene to stop the alleged excessive force must also be dismissed. "Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention." *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004). For the same reason, the Court need not reach Defendants' alternative argument that they are entitled to qualified immunity. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (citing *Russell v. Harms*, 397 F.3d 458, 462-63 (7th Cir. 2005) ("[W]e will only address whether defendants are protected by qualified immunity if, as a threshold matter, we find that the facts, when viewed in the light most favorable to [Plaintiff], establish that [his] constitutional rights were violated.").

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 69) is granted. Judgment will be entered in favor of Defendants.

ENTER:

Dated: May 5, 2015.

*[signature: Sheila Finnegan]*
SHEILA FINNEGAN
United States Magistrate Judge